IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **EPS – EHRHARDT + PARTNER SOLUTIONS INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**HONEYWELL INTERNATIONAL INC., VOCOLLECT, INC., AND HAND HELD PRODUCTS, INC.**<br><br>**Defendants.** | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff EPS – Ehrhardt + Partner Solutions, Inc. ("EPS" or "Plaintiff") brings this Complaint for Declaratory Relief against Defendants Honeywell International Inc., Vocollect, Inc., and Hand Held Products, Inc. (collectively, "Honeywell" or "Defendants"), and alleges as follows:

**NATURE OF THE CASE**

1. This is an action for a Declaratory Judgment and other relief brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiff seeks a declaratory judgment that Plaintiff has not violated any patent rights purportedly owned by Defendants.

**PARTIES**

2. EPS – Ehrhardt + Partner Solutions Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 17505 Interstate Hwy. 35W, Northlake, TX 76262.

1

3. On information and belief, Defendant Honeywell International Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 855 S Mint St., Charlotte, NC 28202.

4. On information and belief, Defendant Vocollect, Inc. is a corporation organized under the laws of the State of Pennsylvania, having a principal place of business at 855 S Mint St., Charlotte, NC 28202.

5. On information and belief, Defendant Hand Held Products, Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 855 S. Mint St., Charlotte, NC 28202.

6. On information and belief, Defendant Vocollect and Defendant Hand Held Products are owned by and/or affiliates of Defendant Honeywell.

## JURISDICTION AND VENUE

7. This is a declaratory judgment action brought under 28 U.S.C §§ 2201-02.

8. This Court has jurisdiction over the subject matter of this action pursuant to the following statutes:

   a. 28 U.S.C. § 1331, this being a civil action arising under the laws of the United States;

   b. 28 U.S.C. § 1337(a), this being a civil action arising under an Act of Congress regulating commerce and protecting trade and commerce; and

   c. 28 U.S.C. § 1338(a), this being a civil action arising under an Act of Congress relating to alleged patent rights.

9. This Court may declare the rights and other legal relations of the parties in this case under 28 U.S.C § 2201, and Rule 57, Fed. R. Civ. P., because an actual and justiciable controversy exists concerning the rights of, and legal relations between, Plaintiff and Defendants.

10. This Court has personal jurisdiction over Defendants consistent with the principles underlying the U.S. Constitution and N.C. Gen. Stat. § 1-75.4.

11. On information and belief, Defendants regularly and intentionally conducted business in this State and District and are subject to personal jurisdiction in this State and District by virtue of their contacts here.

12. Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

13. Plaintiff EPS – Ehrhardt + Partner Solutions Inc. is a global leader in the supply chain optimization software industry. EPG's software products, include, without limitation, warehouse management systems ("WMS"), warehouse control systems ("WCS"), workforce management ("WFM"), transportation management systems ("TMS") and voice solutions to optimize logistics processes.

14. On information and belief, Defendant Honeywell International Inc. ("Honeywell International") is a publicly traded corporation (NYSE: HON) generating over $38 billion in total annual revenue in 2024.

15. Honeywell International is the purported owner of over 27,000 patents covering a wide range of technologies, including aerospace, building automation technologies, industrial automation technologies, performance materials and technologies, safety and productivity solutions, and more.

16. On information and belief, Defendant Hand Held Products, Inc. ("Hand Held") is a wholly owned and controlled subsidiary of Honeywell International.

17. On information and belief, Hand Held, originally founded in North Carolina, was acquired by Honeywell International in 2007 for a purchase price of approximately $390 million. Hand Held purports to have designed, developed and offered a wide range of data collection and communication products for mobile, on-site, and transaction processing in retail, healthcare, utilities, transportation, and logistics.

18. On information and belief, Defendant Vocollect, Inc. ("Vocollect") is wholly owned subsidiary of Intermec Inc., a Delaware corporation, which is an indirect subsidiary of Hand Held Products, Inc. ("Hand Held").

19. On information and belief, Vocollect was acquired by Intermec Inc. in 2011. Intermec was thereafter acquired by Honeywell International in 2013. Vocollect is a self-described leader in voice technology solutions and offers its products for use in various industries, including distribution centers for order fulfillment.

20. On January 18, 2022, Honeywell, through its in-house Deputy Intellectual Property Counsel, William Munnerlyn, wrote a letter accusing EPS of infringing U.S. Patent Nos. 7,609,669 (the "'669 Patent"); 8,700,405 (the "'405 Patent"); and 9,642,184 (the "'184 Patent"), by making, using, offering to sell, and selling the Lydia Voice Software solution. This letter demanded EPS to "immediately cease its infringing activity, desist from such infringing activity in the future, recall and destroy all infringing materials, and produce an accounting of all sales resulting from such infringing activity." Honeywell further demanded "documents sufficient to show the Software's functionality for determining the performance of a system and determining any corrective actions to improve the performance or alternatively to establish that any such features

4

Case 3:25-cv-00494-FDW-SCR    Document 1    Filed 07/09/25    Page 4 of 9

are not present in the software…" Additionally, the letter also includes an invitation to engage in licensing discussions regarding the identified patents.

21. On February 16, 2022, EPS, through its outside counsel, sent a letter to Honeywell denying any allegations of infringement and respectfully declining Honeywell's offer to discuss any licensing opportunities with respect to the three patents identified in Honeywell's January 18, 2022 letter.

22. On May 2, 2023 (over a year later), Honeywell, through its in-house IP Litigation Counsel, Adam Doane, responded to EPS's letter dated February 16, 2022. Honeywell maintained its position that the Lydia Voice Software infringes the '669, '405, and '184 Patents and reiterated its offer to discuss a potential license. Furthermore, Honeywell accused EPS of infringing even more patents, namely U.S. Patent No. 7,885,419 (the "'419 Patent"), U.S. Patent No. 8,255,219 (the "'219 Patent") and European Patent No. 2359362, in addition to the previously identified '669, '405, and '184 Patents.

23. On September 8, 2023 (over 6 months later), Honeywell, through its outside litigation counsel at Alston & Bird, sent another letter reiterating its prior accusations of EPS's infringement of the '669, '405, '184, '419, '219 Patents, and EP Patent No. 2359362. Additionally, this new letter from Honeywell's outside counsel accused EPS of infringing three additional patents, namely U.S. Patent Nos. 9,361,882 (the "'882 Patent"), 8,550,354 (the "'354 Patent"), and 8,914,290 (the "'290 Patent), bringing the total number of asserted patents to nine. Honeywell's letter further demanded that EPS provide a response to its licensing offer by no later than September 29, 2023.

24. On September 27, 2023, EPS, through its outside counsel, promptly responded to Honeywell's September 8, 2023 letter by reiterating its denial of any and all allegations of infringement.

25. On December 5, 2023 (nearly three months later), Honeywell sent another letter to EPS with claim charts for the '882, '354, and '290 Patents and repeating its demand that EPS take a license to the patents included in Honeywell's various letters.

26. On March 5, 2024, EPS, through its outside counsel, sent a fulsome response to Honeywell's December 5, 2023 letter, further outlining its position and denying all allegations made against it.

27. On June 23, 2024, Honeywell, through its VP & Chief IP Litigation Counsel, Jeremy Whitley, responded to EPS's March 5, 2024 letter, and concluded with accusations that EPS was infringing even more U.S. Patents than the nine previously mentioned by Honeywell, namely U.S. Patent Nos. 7,827,032 (the "'032 Patent"), 7,949,533 (the "'533 Patent") and 11,817,078 (the "078 Patent") (bringing the total number of asserted patents to twelve).

28. On August 14, 2024, corporate representatives from EPS and Honeywell participated in an in-person business-to-business meeting in Charlotte, North Carolina, to discuss this matter.

29. After the parties' business-to-business meeting, Honeywell resumed its pattern of accusatory conduct toward EPS by sending additional correspondence containing threats of litigation unless EPS entered into a license agreement on terms unilaterally dictated by Honeywell.

30. For example, on October 28, 2024, Honeywell, through its in house counsel, wrote to counsel for EPS stating "the parties need to resolve the license issue soon and separately. Let me know if your client is interested in continuing the licensing discussions. If we don't hear back from you this week, we will assume not."

31. Similarly, in an email dated March 12, 2025, Honeywell reiterated its position, writing "Honeywell needs to move this forward so we will assume the answer is no [to Honeywell's unreasonable license demands] if we don't hear back from you this week." Again, Honeywell repeated its practice of issuing unilateral ultimatums wherein silence or delay constituted an affirmative "no" from EPS.

32. In another email dated April 29, 2025, Honeywell wrote "[L]et me know by the 9th if EPS is interested in continuing the licensing discussions. If we don't have a yes by then, we will assume the answer is no. We've been at this long enough that those are the only acceptable answers to us."

33. By May 27, 2025, Honeywell was back to its threats of escalating this matter to litigation unless EPS agreed to Honeywell's unreasonable demands. One of Honeywell's last communications, on June 25, 2025, included a withdrawal of a previous license offer. Finally, on July 9, 2025, Honeywell made another veiled threat by claiming that it planned to "move this matter forward" in "one fashion or another" unless EPS agreed to pay an exorbitant license fee.

34. EPS has been consistent and clear that it was interested in resolving this matter but also that it does not have any legal liability to Honeywell; yet, Honeywell has persisted in its pattern of threats unless EPS capitulated to its license demands. Despite its years-long pattern of threats, however, Honeywell has not filed suit against EPS, thus leaving EPS is in the unenviable position of operating its business under a cloud of uncertainty wrongly created by Honeywell. EPS has tried in good faith to resolve this matter without the involvement of the courts, but enough is enough. EPS is entitled to a declaratory judgment resolving this matter once and for all.

## COUNT I
## DECLARATORY JUDGMENT

35. The allegations in the preceding paragraphs are incorporated herein by reference.

36. Defendants have threatened Plaintiff's business by accusing Plaintiff of unlawful actions, including infringement of ever-growing list of patents, namely U.S. Patent Nos. 8,700,405; 9,642,184; 8,255,219; 7,885,419; 7,609,669; 9,361,882; 8,914,290; 8,550,354; 7,827,032; 7,949,533; and 11,817,078 (collectively, the "Asserted Patents").

37. Plaintiff has denied any liability for all allegations made by Defendants.

38. Despite Plaintiff's denials, Defendants have continued to threaten Plaintiff and its business with accusations concerning their purported patent rights.

39. Plaintiff is legally permitted to make, import, use, sell, and offer to sell its products and otherwise conduct its respective business activities without permission, involvement, or interference from Defendants.

40. There is an actual and substantial controversy between Plaintiff and Defendants of sufficient immediacy and reality to warrant the rendering of a declaratory judgment by this Court.

41. Plaintiff is entitled to a judgment declaring that it has not violated any purported rights of Defendants under federal, state, or common law and is not liable to Defendant for any claims, including any claim for patent infringement concerning the Asserted Patents.

## PRAYER FOR RELIEF

In view of the foregoing, EPS asks that this Court grant the following relief:

A. Declaring that Plaintiff has not violated any purported rights of Defendants, including any provisions of 35 U.S.C. § 101 *et seq.* or any other asserted federal, state, or common law laws;

B. Finding this case exceptional in favor of Plaintiff pursuant to 35 U.S.C. § 285, and awarding Plaintiff its costs and reasonable attorney fees; and

C. Granting Plaintiff any such further legal and equitable relief as the Court may deem just and proper.

## **JURY DEMAND**

EPS hereby demands a trial by jury of all issues in this action so triable.

Respectfully submitted,

Dated: July 9, 2025

s/ *J. Mark Wilson*
Kathryn G. Cole
N.C. State Bar No. 39106
J. Mark Wilson
N.C. State Bar No. 25763
Jacob Z. Zambrzycki
N.C. State Bar No. 56223
Rebecca Alba Rathmell
N.C. Bar No. 61881
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone (704) 331-1000
Facsimile (704) 339-5981
Email: katecole@mvalaw.com
Email: markwilson@mvalaw.com
Email: jacobzambrzycki@mvalaw.com
Email: rebeccarathmell@mvalaw.com

*Attorneys for Plaintiff*
*EPS – Ehrhardt + Partner Solutions Inc.*